## GILMORE *vs.* BUSSEY.

A negotiable promissory note given for a subsisting debt, will not be regarded as *payment* of the debt, when it is otherwise understood or agreed by the parties, at the time.

Therefore, where a general agent gave his negotiable note for labor performed for his principal, the understanding of the parties being, that it was merely to settle the amount and enable the payee to obtain payment of the principal; and on the principal refusing to take up the note, payment was enforced against the agent, it was *held* that the statute of limitations, as it regarded the principal, would commence running from the time of such payment, and not from the time of giving the note.

THIS was an action of *assumpsit*, in which the plaintiff sought to recover a sum of money, alleged to have been paid by him for the defendant, under the direction of one acting as his general agent.

The defendant pleaded the general issue, and under a brief statement relied upon the statute of limitations.

The plaintiff read a letter from the defendant to him, dated *October* 15, 1818, in regard to the occupation and improvement by the plaintiff, of certain lots of land belonging to the defendant. He then called *Thomas Morrill* as a witness, who testified that he worked for the plaintiff in the summer of 1821, on the lands of the defendant, at the request of the plaintiff, and received his promissory negotiable note therefor; *Morrill* stating that he contemplated purchasing some land of the defendant, and that he would turn out said note towards the purchase money.

It was also proved that *Samuel Lowder, Jr.* who was the general agent of the defendant at the time, told the plaintiff that he might hire *Morrill* to assist him in getting hay.

*Morrill* further testified, that he did purchase land of the defendant, through his agent, *Lowder,* and frequently requested the latter to receive said note in part payment, and expected that it would be so received, until the year 1827, when on *Lowder's* refusing to allow it, he, the witness, commenced a suit upon the note against the present plaintiff. That, after this, *Gilmore* and *Lowder* both came to him, and that the latter promised him that he would stop the suit and pay the debt; and that he, the witness, thereupon wrote to his attorney to stay further proceedings, which was accordingly done. Notwithstanding this, *Lowder* still declining to pay or allow the note, *Morrill* commenced another suit upon it against the present plaintiff, and after obtaining judgment against him, the debt was satisfied by a sale of *Gilmore's* property on execution, *December,* 1827.

The defendant read in evidence, a power of attorney from him to *Samuel Lowder* and *Samuel Lowder, Jr.,* given in 1823.

On this evidence, *Ruggles J.,* in the Court of Common Pleas, instructed the jury, that if the note to *Morrill* was given by the plaintiff on account of the defendant and for his benefit, by virtue of the limited agency, created by the agreement between the plaintiff and defendant, he, the defendant, became liable to the plaintiff therefor; and if it had been in no wise accounted for, it was still a subsisting claim against the defendant; — that the law raised a presumption of payment after the lapse of six years from

the time of giving said note to *Morrill*, which would be rebutted by a subsequent promise to pay the debt, or an unqualified admission of its being still due : and that the promise by the defendant's general agent, if made for the defendant, to stop the action and pay the note, as testified to by *Morrill*, if they believed the testimony, revived the liability of the defendant ; and that they might consider the defendant as thereby assuming the debt due to *Morrill* — and the payment of it afterwards by the plaintiff, was paying money to the use of the defendant ; and that the statute of limitations would commence running from the time the money was so paid and the execution discharged.

He also instructed the jury, that the new power of attorney from the defendant to *Lowder* and *Lowder, Jr.*, was not a revocation of the authority under which the latter acted in directing the employment of *Morrill.*

A verdict being returned for the plaintiff, the defendant's counsel took exceptions to the foregoing ruling of the Judge, and thereupon brought the cause into this Court.

*Rogers*, for the defendant, contended that the plaintiff had no authority to hire *Morrill* on the defendant's account ; but if he had, that then the negotiable note of the plaintiff to *Morrill* was a payment, and consequently that the statute of limitations would commence running from that time.

He also objected to the instructions of the Judge, as to the revival of the debt by the promise of *Lowder, Jr.*, insisting that he had no authority to bind the defendant for that purpose ; and at most, that it was a promise to *Morrill* and not to the plaintiff.

*Brown*, for the plaintiff, submitted the case without argument.

WESTON C. J. — The jury have found that the plaintiff has paid money to the use of the defendant. It must have been upon the ground that the labor of *Morrill*, was performed in the defendant's service, and on his account. There is evidence to sustain this finding ; although it is not to be found in the defendant's letter, addressed to the plaintiff. *Lowder, Jr.* the general agent of the defendant at the time, authorized the plaintiff to hire *Morrill* ; and unless it was to be on the defendant's account, there was no necessity for such authority. If the plaintiff was author-

ized to hire, he had by implication authority to pay for the services rendered. When did he pay? A negotiable note will discharge a prior debt on simple contract, unless it is otherwise agreed. But it is very evident that neither *Gilmore* nor *Morrill* considered *Bussey* discharged ; for it was taken with a view that it should be allowed and paid by the latter. It was intended to be made use of as evidence to show the value of the services performed by *Morrill*. *Lowder* had notice that the note was given for this purpose, and was frequently requested to turn it on account of what was due from *Morrill* to *Bussey* for land. *Morrill* testified that he did not ascertain that *Lowder* would not allow the offset, as he expected, until 1827. Up to that period he had regarded it as evidence of his claim against *Bussey*. He then turned upon his immediate employer, the plaintiff, the statute of limitations not having at that time attached, and ultimately enforced payment. Upon these facts, the mere giving of the note by the plaintiff was not such a payment as would have discharged the defendant from the claims of *Morrill*. It was not so received or intended. If the plaintiff had not paid or had been unable to pay, *Morrill*, notwithstanding the note, could have recovered for his labor of *Bussey*, proving that it was performed on his account, and that the note was originally received, not as payment, but as a voucher against him.

It was not then until the plaintiff had actually paid the money, which he was justified in doing by his authority to hire, that any right of action accrued to him against the defendant. Within six years from that time, this action was brought. The case does not therefore require a new promise, which there has been an attempt to prove, the sufficiency of which it is unnecessary to determine, or the authority of the agent, by whom it is alleged to have been made.

*Exceptions overruled.*